L. A. STORCH & Co., Plaintiff, *v.* MARGINAL REALTY CORP. et al., Defendants.

(Supreme Court, New York Special Term, January, 1919.)

*Lien — labor and materials furnished after abandonment of contract — priority. Notice of lien must state value of the labor performed or the materials furnished — when description of property insufficient — Lien Law, § 9 (4, 7).*

ACTION to enforce a lien.

Benjamin Berger, for plaintiff.

Eidlitz & Hulse, for defendant D. H. McLaury Tile Co., Inc.

Wilson, Barker & Wager, for Murtha & Schmohl Company.

Solomon C. Whitbeck, for The Peele Company.

Ascher & Goldstein, for Northern Waterproofing Company.

Thomas & Houghton, for John P. Kane Company.

Wilbur F. Earp, for S. H. Pomeroy Co., Inc.

A. H. Burroughs, for Marginal Realty Company.

Louis H. Porter, for Yale & Towne Manufacturing Company.

Robert D. Geswein, for Wells Brothers Company.

M. Carl Levine, for Friedman Marble & Slate Works, Inc.

Lewis & Schaap, for Empire City Iron Works, Inc.

LEHMAN, J.   The plaintiff herein is a subcontractor who performed work and provided material for the defendant Wells Brothers Company in the improvement of certain premises in the city of New York known by the street numbers 513, 515, 517 and 519 West Twenty-fifth street.  The Marginal Realty Corporation was, and still is, the owner in fee of these premises, and on or about the 12th day of January, 1916, entered into an agreement with the defendant Wells Brothers Company whereby it agreed to pay to the Wells Brothers Company the cost and an agreed percentage upon said cost, not, however, to exceed the sum of $190,000, for the erection of an eight-story building on this property.  Wells Brothers Company carried out the work until it was almost completed, and then, owing to a dispute as to payments due, it abandoned the work.  Under the terms of the contract the Marginal Realty Company had the right if the contract was abandoned to complete the work for itself and to charge the expense of the labor, tools and materials to the contractor.  Acting under this provision the Marginal Realty Company proceeded to complete the building.   Thereafter the plaintiff and the defendants filed mechanics' liens for the amount due and unpaid to them by Wells Brothers Company.  It is undisputed that the cost of the work performed by the Wells Brothers Company prior to its abandonment of the contract exceeded the sum of $190,000. ˙ It is also undisputed that it performed extra work upon the order of the Marginal Realty Company in the sum of $23,963.94, so that the total amount payable by the owner under the contract and for the extra work is the sum of $213,963.94.  The owner has

paid to Wells Brothers Company on account the sum of $199,531.81, leaving a balance due of $14,432.13. The owner has also expended in the completion of the contract at least the sum of $3,817.62 and has paid on account of the contractor to subcontractors the sum of $2,204.51. The subcontractors claim that the balance of $8,410 is the amount still due to the contractor which can be applied upon their liens filed against the property. The owner, on the other hand, claims that in addition to these undisputed amounts it has paid out or made itself liable for the sum of $2,462.35 spent in repairing defective waterproofing work, and that in addition it will cost approximately $6,000 to make the work entirely waterproof, and that under a contract with the waterproofing company it will be obliged to pay at least one-half of the entire cost of repairing the waterproofing, and that therefore the amount in its hands applicable to the liens of the subcontractors must be correspondingly reduced. It further claims that it has been obliged to pay a small item of $209 to another subcontractor to complete his work. The evidence produced by the defendant in regard to these items is extremely unsatisfactory. It appears sufficiently that the waterproofing was rendered defective by carelessness of the masons who pierced at some places the waterproof membrane. On the other hand, it appears that a considerable part of the holes in the membrane were caused not by the masons employed by Wells Brothers Company, but by masons employed by the owner, for whose negligence the owner is responsible. After carefully considering the evidence produced on this point I have come to the conclusion that the defendant's proof of the cost and necessity of doing this work in order to complete Wells Brothers Company's contract is so unsatisfactory that the court should disregard it. Since it appears, however, that he was obliged to incur at least some expense to repair the

defects in the waterproofing work, the owner claims that he is entitled to charge such expense to the fund in his hands before the liens can attach thereto, and that since the burden is on the lienor to show the sum due after the completion of the work, the court cannot disregard the evidence produced by the owner, however unsatisfactory that evidence may be, for then there would be no evidence of the actual cost of completion, and consequently the lienors would not have sustained their burden of proving the amount due by the owner upon the contract. *Brainard* v. *County of Kings,* 155 N. Y. 538. To some extent this contention of the owner seems to me to be sound. There is, however, some basis for a finding as to the amount expended by the owner aside from the evidence set forth above. The owner in its answer alleges " that the reasonable cost and value of the work that remained to be done by it for and on account of said Wells Brothers Company was approximately the sum of $5,071.19, * * * but said work not having as yet been entirely completed, the defendant states that said figure is only an estimate." It also alleges in the answer that " since this defendant, including expenditures already made and those that it will be obliged to make in order to complete the work of the said contract, will have expended not less than the sum of $206,807.51, there will remain in the hands of this defendant not exceeding the sum of $7,156.43 due and payable to the said Wells Brothers Company on account of the work of said contract or to those claiming under said Wells Brothers Company as lienors or otherwise." These figures in the answer are, of course, not entirely binding upon the defendant, for the answer expressly states that the figures are only an estimate. Yet they constitute an admission on the part of the defendant, and in the absence of more satisfactory evidence I feel that the court is justified in basing its finding of the actual cost of completion

upon these figures, even though they be expressly stated to be only approximate and subject to correction. In adopting these figures I am allowing to the owner the full cost of the undisputed items and a considerable sum in addition upon the disputed items, even though the evidence produced by the owner in regard to them is unsatisfactory. There is practically no dispute as to the amount of work performed by each of the subcontractors or as to the amount due to each of them from the Wells Brothers Company. Since, however, the fund in the hands of the owner is insufficient to pay in full all the claims of the subcontractors, the liens filed have become the subject of attack and counterattack in an endeavor by each lienor to obtain priority of payment for his own claim. The objection to the plaintiff's lien is that the notice of lien filed does not comply with subdivision 4 of section 9 of the Lien Law, and the lien of the John P. Kane Company, which is next in order of priority of filing to that of the plaintiff, is attacked on the ground that the notice of lien does not comply with subdivision 7 of the same section. The determination of the question of whether the notice of the plaintiff and the notice of the John P. Kane Company sufficiently complied with the statute will necessarily also determine the validity of the other liens attacked on similar grounds, and for that reason it is necessary to give serious consideration only to these two notices. The plaintiff's notice of lien states: " 4a. The labor performed was installation of roofing work, skylights, gutters, leaders and flashings. b. The labor to be performed is installation of wire screens for skylights and door hoods. c. The material furnished was copper for skylights, gutters, flashings and leaders, and felt, pitch and slag for roofing. d. The material to be furnished is galvanized wire screens for skylights and copper for hoods over doors. e. The agreed price and value of said labor is $900. f. The agreed price and value of

**43**

said material is $4,511.52." Prior to 1916 the Lien Law provided: " Section 9. The notice of lien shall state * * *. 4. That the labor performed or to be performed, or materials furnished or to be furnished, and the agreed price or value thereof." By chapter 507 of the Laws of 1916 this subdivision was amended to read as follows: " 4. The labor performed or materials furnished and the agreed price or value thereof, or materials actually manufactured for but not delivered to the real property and the agreed price or value thereof." The plaintiff's notice of lien makes no attempt to state the value or agreed price of the labor performed or materials furnished apart from the agreed price of the labor to be performed or the materials to be furnished thereafter, but apparently gives one price or value for all the materials or labor covered by the contract. There is some authority for the view that a notice of lien in this form sufficiently complied with the statute before its amendment in 1916, but it seems to me that since that amendment a notice in this form is clearly insufficient. The statute no longer requires the notice to state the agreed price or value of labor to be performed or materials to be furnished, but it does expressly and unequivocally require the notice of lien to state the agreed price or value of the labor performed or materials furnished, or of the materials actually manufactured for but not delivered to the real property. Since the notice contains no statement from which the agreed price or value of such labor or materials could be computed, it does not even substantially comply with this requirement of the statute. The plaintiff, however, apparently claims that the legislature never intended to amend the Lien Law except to provide for the inclusion in the lien of a claim for materials actually manufactured for but not delivered to the real property, and that the omission of the words " or to be performed " and " or to be

furnished " was unintentional. This argument of the plaintiff seems to be based upon the fact that section 10, which provides that the notice of lien may be filed at any time during the progress of the work, was not amended to provide that the notice could be filed only after the completion of the work. It is quite evident, however, that even if no notice of lien can now be filed which will include labor to be performed or materials to be furnished thereafter, yet the purpose of the statute, even in its present form, can be fully carried out only if the lienor is permitted to file such notice while he is continuing to work under his contract and as soon as he has done any work or furnished any materials for which a lien can be claimed. In any event, however, the law in its present form does not contain the omitted words, and the courts should not speculate as to whether the legislature intended to change the statute in the manner in which such change has been made, but may simply construe the actual language used by the legislature. That language, in my opinion, is not ambiguous, and there is no room for any difference of opinion as to its meaning, regardless of whether the court construes the language strictly or liberally. In its present form it distinctly calls for a statement of the value of the labor performed or the materials furnished, and the plaintiff has not attempted to include in its notice of lien such a statement, and consequently its lien is not enforcible. The notice of lien of the defendant John P. Kane Company states: " The property subject to the lien is a certain lot or parcel of ground, with the building erected thereon, in the borough of Manhattan, city of New York, and a description sufficient for its determination and location is as follows: It is situated in the said city, on the north side of West 25th street, 200 feet west of 10th avenue, being 50 feet wide, front and rear, by 98 feet and 9 inches deep on each side, and known as Numbers 517 and 519 West 25th street,

and shown on the following diagram." Appended to this description is a diagram in strict accordance with the above description. Subdivision 7 of section 9 of the Lien Law requires that the notice of lien shall state " the property subject to the lien, with a *description thereof sufficient for identification,* and if in a city or village, its location by street and number if known." The description contained in the notice of lien is an accurate description of the premises known as Nos. 517 and 519 West Twenty-fifth street. The property, which has been improved and which is subject to the liens, includes, however, not only Nos. 517 and 519 West Twenty-fifth street, but also Nos. 513 and 515. In other words, the description and the diagram in the notice of lien covers the westerly half of the property in question, which is 100 feet wide instead of 50 feet wide, and which begins at a point 150 feet west of Tenth avenue instead of 200 feet west of that corner, as described in the notice of lien and shown on the diagram. A similar question was passed upon by the Appellate Division in the case of *Sprickerhoff* v. *Gordon,* 120 App. Div. 748. In that case the notice of lien described the property subject to the lien as being " on the southwest corner of Broome & Mangin St., being about 25 feet and — inches wide, front and rear, by about 75 feet and — inches deep on each side, and known as Number — and shown on the following diagram." Then followed a diagram showing a lot corresponding to the description. The lot upon which the building stood was actually fifty instead of twenty-five feet wide. This lien was foreclosed and a sale had pursuant to the judgment of foreclosure. The purchaser upon that sale refused to accept title principally upon the ground that the notice of lien was defective. The question of whether the purchaser should be required to accept title was submitted to the Appellate Division upon an agreed state of facts, and the Appellate Division, by a divided

court, decided that he should not be required to accept title, and the judgment of the Appellate Division was thereafter affirmed by the Court of Appeals (194 N. Y. 577). The opinion of the Appellate Division, by Mc-Laughlin, J., states: " The judgment of foreclosure, in pursuance of which a sale is had, has for its foundation the notice of lien upon which its validity depends. It is true the statute is remedial and is to receive a liberal construction, but this does not authorize the court to entirely dispense with what the statute says the notice must contain. (*Mahley* v. *German Bank,* 174 N. Y. 499.) To hold under the facts here presented that good title to the lot in question can be given by the referee is to disregard the notice and supplement it by extrinsic proof, and I do not see how that can be done. (*Armstrong* v. *Chisolm,* 100 App. Div. 440.) " If this statement of the law is sound and binding upon me, then it is decisive as to the validity of the notice of lien under consideration. The opinion, however, continues with the words: " There certainly is sufficient doubt about the question so that a purchaser ought not to be compelled to take the title," and the actual decision of the court seems to be based upon the ground that there is reasonable doubt about the soundness of the title which could be conveyed upon this sale. In the subsequent case of *Hurley* v. *Tucker,* 128 App. Div. 580, the court seems to have taken this view of its own decision, for the prevailing opinion, per Scott, J., states: "*Sprickerhoff* v. *Gordon* (120 App. Div. 748), much relied upon by the appellant, is not at all in point. The question of the sufficiency of the notice of lien arose in that case upon an application to compel the purchaser, upon a sale of real estate under foreclosure of a lien, to accept the referee's deed, and the application was denied because the notice was deemed to be of doubtful validity and upon the well-settled rule that a purchaser will not be compelled to take a doubtful title or one which he may

be obliged to defend by litigation." This interpretation by the Appellate Division of its own earlier decision seems to me to be binding upon me, even though none of the judges who concurred in the earlier opinion concurred in the subsequent decision. I must, therefore, regard the statements contained in the opinion of *Sprickerhoff* v. *Gordon* that to hold that good title to the land in question cannot be given by the referee is " to disregard the notice and supplement it by extrinsic proof " as an *obiter dictum*. However, even as a dictum it is entitled to respect. There is no doubt that the courts will disregard mere errors in description provided that the notice contains a description which is sufficient to identify the property. If in the present case the description in the notice had covered a plot with a 200-foot frontage instead of a 100-foot frontage, then it might well be argued that since the greater includes the less the description would be sufficient to identify the property actually subject to the lien, even though it was in the one respect erroneous. The same result might be arrived at if the property were correctly shown on the diagram, or even if it included the correct street numbers. In the present case, however, there is an accurate description applicable to one-half of the property, and which cannot by any possibility include the other half of the property. That description seems to me not only insufficient in itself to identify the property covered subject to the lien, but the court could make a finding that the lienor intended to describe the property in his notice of lien only by disregarding the notice itself, and by drawing an inference from extrinsic testimony that since the subcontractor had done work on one building covering premises with a 100-foot frontage, and since that property would be subject to a lien in favor of the subcontractor upon compliance with the statute, thereupon it must follow that the subcontractor intended in his

notice of lien to describe the property on which the improvement was erected and which is subject to his lien. Even though the actual description used in his notice does not fit the improved property, it may be argued, however, that since the lienor has accurately described one-half of the property which is subject to the lien, he should be entitled to enforce his lien as against the part described. If the John P. Kane Company has a lien upon half of the property which it can enforce by sale, such lien must arise by virtue of an improvement made upon the property subject to the lien. In the present case, however, there is no evidence that the John P. Kane Company performed any labor or furnished any materials which could be apportioned to an improvement on the specific property described in the notice. It follows that the notice of lien of the John P. Kane Company is fatally defective. The notice of lien of the Yale & Towne Manufacturing Company is subject to the same objection. I find that the following liens have been established and should be paid in the order herein set forth in so far as the fund in the owner's hands is sufficient for this purpose: The Peele Company, $1,564.52; S. H. Pomeroy & Co., Inc., $1,897; Edward E. Fitzsimmons, $731.21; Charles Johnson, $677.76; Empire City Iron Works, $1,331.64; D. H. McLaury Tile Company, $1,089.88. These liens will completely exhaust the fund in the hands of the owner as found by me. In addition the plaintiff is entitled to a judgment against the Wells Brothers Company in the sum of $2,946.52, and the John P. Kane Company is entitled to a personal judgment in the sum of $6,335.41, and the lienors subsequent to the D. H. McLaury Tile Company are entitled to personal judgments for the amounts of their claims as proven. The plaintiff's attorney claims that even if the plaintiff's lien should be declared invalid, he should receive costs and an extra allowance because of his services in

preparing the case for trial and presenting proof in behalf of all the lienors. I have no doubt of the value of the services so rendered, and would grant the costs and a reasonable allowance, payable out of the fund if I have the power to do so. Upon the settlement of the decision I am willing to accept a memorandum upon this point.

Judgment accordingly.